# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TRENTON DALE MELLEN,**  Plaintiff,  vs.  **SALT LAKE CITY, et al.,**  Defendant, | **MEMORANDUM DECISION AND ORDER**  Case No. 2:17CV00493DBP  Judge Dale A. Kimball |

This matter is before the court on Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing on the motion was held on February 7, 2018. At the hearing, Plaintiff was represented by Angela H. Elmore, and Defendants were represented by Catherine L. Brabson. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On July 29, 2013, Salt Lake City Police Officer Himle ("Himle") pulled over Plaintiff Trenton Mellen ("Mellen") for suspected driving under the influence ("DUI"). Himle performed a field sobriety test on Mellen, which he failed. Himle arrested Mellen for DUI, having an expired driver's license, and failure to stop or yield. At the time of the arrest, Mellen submitted

to a blood draw, which returned positive results for trace amounts of Trazodone. On October 2, 2013, Salt Lake City ("the City") charged Mellen with the above-mentioned crimes.

On November 7, 2013, the City dismissed the charges for expired license as Mellen provided proof of a valid license, and he entered pleas of not guilty for DUI and failing to stop or yield. In December 2013, Mellen's attorney forwarded proof of Mellen's Trazodone prescription accompanied with a letter from Mellen's doctor regarding his disability. One of Mellen's other doctors sent another letter to the City on March 5, 2014 and relayed his dosage and length of time on the prescription. On January 14, 2014, Ryan Richards received a toxicology report from Utah State Laboratories, which he forwarded to Mellen's counsel. The report showed Mellen had 162.62 ng/ml of Trazodone in his system. This calculation was given to the City on April 2, 2014. Thereafter, Associate City Prosecutor Brandon Simmons confirmed that Mellen was within therapeutic levels, but also noted that, according to the state toxicologist's opinion, Trazodone could still be impairing at therapeutic levels.

On July 9, 2014, the Justice Court held a hearing on Mellen's motion to suppress evidence based on a lack of probable cause. The motion was granted, but City Prosecutor Steve Newton filed a notice of appeal of the ruling to the Third District Court. Around the time of the hearing, Mellen's mother, uncle, and attorney sent letters to the City Prosecutors and Mayor Ralph Becker discussing Mellen's disability, his use of Trazodone, and overall concerns with the case. Mayor Becker responded with confidence in the City Prosecutor's office and their handling of the case. On or around August 6, 2014, an article was published in *City Weekly* that was critical of the Chief City Prosecutor, Padma Veeru-Collings ("Veeru-Collings") and the handling of Mellen's case. Mellen participated in the article.

The Third District Court held an evidentiary hearing on November 24, 2014, in which the court ruled there was sufficient evidence to establish probable cause. The District Court denied Mellen's motion to suppress, and remanded the case to the Justice Court for trial. On March 26, 2015, Douglas Rollins, an expert for Mellen, opined that the Trazodone did not impact Mellen's driving, and Mellen forwarded the report to the City the next day. On April 1, 2015, Veeru-Collings directed Paige Williamson to file a motion to dismiss the remaining two charges without prejudice. The court entered an order of dismissal on April 8, 2015.

Mellen has filed the instant action in this Court, alleging causes of action for malicious prosecution, First Amendment retaliation, and Eighth Amendment cruel and unusual punishment arising under 42 USC § 1983. Mellen also alleges causes of action for malicious prosecution and intentional infliction of emotional distress under Utah state law.

## DISCUSSION

### A. Standard of Review

Defendants move to have all causes of action dismissed for Plaintiff's failure to state a claim upon which relief can be granted according to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

**B. 42 USC § 1983 Claims**

Defendants seek to have all causes of action dismissed based on the doctrine of absolute prosecutorial immunity. The United States Supreme Court first addressed the question of absolute immunity for prosecutors regarding § 1983 claims in *Imbler v. Pachtman*. 424 U.S. 409, 420 (1976). In *Imbler*, the Court held that absolute immunity attaches to a prosecutor's activities when those activities are "intimately associated with the judicial phase of the criminal process." *Id.* at 430. The Court continued, "[I]n initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431. The Court's analysis was founded soundly in public policy considerations. It reasoned that the "public trust of the prosecutor's office would suffer if [prosecutors] were constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages." *Id.* at 424-25. "Further, if [a] prosecutor could be made to answer in court each time . . . a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Id.* at 425. While such a rule could leave some plaintiffs without judicial redress, the Court reasoned it would be better than leaving prosecutors consistently exposed to retaliatory suits. *See id.* at 428. However, when prosecutors act in an administrative or investigative role rather than that of an advocate, they are not entitled to absolute immunity. *Id.* at 431-31.

Since the decision in *Imbler*, the Supreme Court has both affirmed and denied absolute immunity for various actions taken by prosecutors. The Court has held that absolute immunity attaches when a prosecutor "prepares to initiate a judicial proceeding." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (referring to *Burns v. Reed*, 500 U.S. 478 (1991)). Likewise, immunity attaches when a prosecutor presents evidence in court when applying for a search

4

warrant. *Kalina v. Fletcher*, 522 U.S. 118 (1997). Conversely, the Court has held absolute immunity does not apply when prosecutors give advice to police officers during criminal investigations, *Burns*, 500 U.S. at 496, "when prosecutors make statements to the press," *Van de Kamp*, 555 U.S. at 343 (referring to *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)), or when a prosecutor "acts as a complaining witness in support of a warrant application." *Id.* (referring to Kalina, 522 U.S. at 132).

Then, in *Van de Kamp*, the Court extended absolute immunity to a prosecutor office's administrative procedures. *Id.* at 344. In that case, the plaintiff brought suit against "the office's chief supervisory attorneys" for failure to "adequately . . . train and . . . supervise the prosecutors who worked for them." *Id.* at 340. The Court noted that such functions were indeed administrative procedures. *Id.* at 344. Nevertheless, the Court held that absolute immunity attached because the functions themselves were "directly connected with the conduct of a trial." *Id.*

The Tenth Circuit follows this Supreme Court framework, while emphasizing that its approach is a "continuum based approach" that reasons the "more distant a function is from the judicial process, the less likely absolute immunity will attach." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994)). However, absolute immunity may even attach to "administrative or investigative activities when [those] functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991).

In this case, Plaintiff's § 1983 claims against Veeru-Collings appear squarely answered by the above Supreme Court and Tenth Circuit precedent. All of Plaintiff's allegations stem from Veeru-Colling's decision of whether to prosecute the charges against Plaintiff. Plaintiff alleges

5

that Veeru-Collings continued to and forced subordinate prosecutors to prosecute him for having participated in the *City Weekly* article and for the letters his family members sent to the City. However, in accord with *Van de Kamp*, Veeru-Collings enjoyed absolute immunity in her supervisory capacity to initiate and continue the prosecution. Her actions were "intimately associated with the judicial process" and "necessary [to] . . . fulfill [her] function as an officer of the court." It is merely speculation to suggest that Veeru-Collings continued the prosecution in retaliation for the *City Weekly* article. The prosecutor's office had been working on the case for over a year before the article was published, and the state toxicologist had opined that Trazodone could still be impairing at therapeutic levels. Moreover, given the Third District Court's reversal of the Justice Court's determination on probable cause, there were obviously grounds for appealing the decision. Accordingly, Plaintiff's § 1983 claims for malicious prosecution and First Amendment retaliation against Veeru-Collings fail due to absolute prosecutorial immunity.

Plaintiff also claims that the City had established policies that violated his constitutional rights. He alleges that the City had a policy to pressure defendants into unfavorable deals, and another policy in which cases receiving media coverage were to be treated differently, requiring more approval from the Chief Prosecutor. There is no factual support that an actual "policy" about offering unfavorable deals actually existed. Likewise, Plaintiff relies entirely on one statement made by a prosecutor regarding the media coverage policy. That statement, however, merely says that cases requiring more supervisory approval "may" include cases covered by the media. Am. Compl. ¶ 95. Additional supervisory approval for a case does not implicate a violation of constitutional rights. If anything, additional supervisory approval could be used to ensure that constitutional rights are not violated. With no reasonable inferences the court can

draw from the alleged facts to establish the existence of such policies, Plaintiff's § 1983 claims against the City also fail.

C. **State Law Claims**

Defendants also seek to have the state law claims of malicious prosecution and intentional infliction of emotional distress dismissed based on the common law doctrine of absolute immunity. In *Imbler*, the Court recognized that the common-law rule of immunity is "well settled" and founded "upon the same considerations that underlie the common-law immunities of judges and grand jurors." 424 U.S. at 423-25. Common-law absolute prosecutorial immunity has its roots dating back to the 1800s. *Id.* at 423 n.20. Additionally, the same public policy considerations that apply to absolute prosecutorial immunity for § 1983 claims also apply to common-law claims. *Id.* at 424.

Plaintiff alleges that Veeru-Collings acted with willful misconduct and intentionally caused him emotional distress. He also alleges, as with the § 1983 claims, that Veeru-Collings maliciously continued his prosecution. However, as the court discussed above, the Complaint alleges no facts other than that Veeru-Collings simply continued the prosecution. Speculation as to why she continued the prosecution, when in fact there was a basis for doing so, is irrelevant under the doctrine of absolute immunity. A prosecutor need not answer for every reason a charge is pursued when there is a basis for the charge. Because initiating a prosecution and preparing a case against a defendant are covered by absolute prosecutorial immunity, Plaintiff's state law claims fail.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is GRANTED, and Plaintiff's Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED this 28th day of February, 2018.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge